On petition to review ballot title filed April 30, considered and under advisement on July 1, ballot title referred to Attorney General for modification August 6, modified ballot title certified September 17, 2009 (347 Or 45)

Jerry CARUTHERS
and Larry Wolf,
*Petitioners,*

*v.*

John R. KROGER,
Attorney General,
State of Oregon,
*Respondent.*

(SC S057315)

213 P3d 1251

Aruna A. Masih, Bennett, Hartman, Morris & Kaplan LLP, Portland, filed the petition and the reply memorandum for petitioners.

Erin C. Lagesen, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the memorandum were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Nathan R. Rietmann, Salem, filed a brief for *amicus curiae* Jim Greenfield.

BALMER, J.

**BALMER, J.**

Petitioners seek review of the Attorney General's certified ballot title for Initiative Petition 34 (2010). *See* ORS 250.085(2) (specifying requirements for seeking review of certified ballot title). This court reviews the certified ballot title to determine whether it substantially complies with ORS 250.035(2). *See* ORS 250.085(5) (stating standard of review). For the reasons explained below, we refer the ballot title to the Attorney General for modification.

Initiative Petition 34, if enacted, would amend Oregon law to provide that "no public resource shall be used to collect or help collect money used for a political purpose." The measure defines "public resources"[1] to include "public money, public employee time on the job during working hours, and public buildings, equipment and supplies." It further states that "a resource shall be deemed to have been used, even if the public entity is reimbursed for the cost of using or providing it * * *." The proposed measure defines "political purpose" to include, among other things, contributions or independent expenditures in support of or in opposition to a candidate, political party, or initiative or referendum. The measure would penalize any person or entity that uses for a political purpose money collected in whole or in part through the use of "a public resource" or that "commingles" money so collected with "political funds." If a person or entity violates the prohibition, then the person or entity must pay a civil penalty of twice the amount of money spent in violation of the measure, and, thereafter, "no public employer or government entity shall collect money for any purpose for that person or entity."

The Attorney General certified the following ballot title for Initiative Petition 34:

"PENALIZES INDIVIDUALS, ENTITIES FOR USING FUNDS COLLECTED WITH 'PUBLIC RESOURCE' (DEFINED) FOR 'POLITICAL PURPOSE' (DEFINED).

"RESULT OF 'YES' VOTE:   'Yes' vote prohibits individuals, entities from using money for 'political purpose'

---

[1] The prohibition in Initiative Petition 34 uses the term "public resource," while the definition refers to "public resources."

(defined) if collected with 'public resource' (defined) or commingled with such money; mandates penalties.

"RESULT OF 'NO' VOTE:  'No' vote retains current law, which does not restrict individuals', entities' use of money collected with public resources, or commingling such money with 'political' funds.

"SUMMARY:  Current law allows individuals, entities to use money for 'political purposes,' including money collected with 'public resources.' Measure prohibits individuals, organizations, other entities from using money for 'political purposes' if 'public resources' were used in collecting it. 'Money' includes in-kind contributions, independent expenditures, pass-through contributions. 'Public resources' include money, public employee work time, buildings, equipment, supplies, excluding resources used in preparing, circulating official voters' pamphlet, conducting election. 'Used for political purpose' means: contributed to candidate, political committee, political party, initiative/ referendum committee; spent supporting, opposing candidate, ballot measure, gathering signatures for proposed measure, petition; excludes certain lobbying activities. Mandates civil penalties; bars government from collecting money for entity that uses such money for 'political purpose' or commingles it with 'political' money. Other provisions."

Petitioners are electors who timely submitted written comments to the Secretary of State concerning the content of the Attorney General's draft ballot title and who therefore are entitled to seek review of the resulting certified ballot title in this court. *See* ORS 250.085(2) (stating that requirement). Petitioners challenge the caption, the "yes" and "no" vote result statements, and the summary.

A ballot title must contain a caption "that reasonably identifies the subject matter" of the proposed measure. ORS 250.035(2). Petitioners assert that the caption of the certified ballot title, which focuses on the fact that the measure "penalizes" individuals and entities that "us[e]" for a political purpose funds collected for them by means of a public resource, understates the scope of the measure and thus does not properly identify the subject of the measure. The caption understates the scope of the measure, petitioners argue, because the prohibition on the use of public resources to collect such money affects not only individuals and entities who

use that money and for whom the measure establishes specific penalties, but also others, such as public employers, that may be involved in collecting the money. Petitioners state that "the restriction is the central subject of the measure and the penalty only the consequence of a violation of that prohibition." The Attorney General responds that the penalties are a key aspect of the measure and that, by specifying that those who use money collected with "public resources" for "political purposes" will be penalized, the certified caption informs voters about what the measure prohibits and also that the measure contains an enforcement mechanism.

■ On balance, we agree with petitioners. The Attorney General is certainly correct that the penalty provision is an important part of the measure, and those subject to the penalties—individuals and entities that use for a political purpose money collected by means of a public resource—doubtless have an interest in knowing the penalty for violating the prohibition. However, the measure *also* restricts the conduct of other entities, including public employers and other governmental entities, that are not subject to any specific penalty. Moreover, the prohibition directly affects yet another group—public employees who may wish to contribute through a payroll deduction or similar procedure to an entity that uses some of the money collected for a political purpose. Thus, in our view, the prohibition in the measure is broader than the caption suggests. The emphasis in the certified caption on the individuals and entities that are subject to specific penalties comes at the expense of the identification of the prohibition itself. That prohibition, which is plainly stated in the first sentence of the measure, quoted above, must be referred to in the caption.[2]

Petitioners assert that the caption also fails to meet the statutory standard because of other alleged deficiencies, but we do not find those arguments to be well taken. We also

_____

[2] Petitioners did not challenge the "yes" and "no" vote result statements or the summary on the grounds just discussed. However, changes to the caption that are required based on this decision may lead the Attorney General to make alterations in other parts of the ballot title in the interest of compliance with ORS 250.035(2)(b) to (d). The Attorney General has the authority to make changes of that kind. *See Hunnicutt/Stacey v. Myers*, 343 Or 387, 393, 171 P3d 349 (2007) (so noting).

reject without discussion petitioners' challenge to the "yes" vote result statement in the certified ballot title.

Petitioners also challenge the "no" vote result statement. They argue that the statement fails to make clear that current law allows individuals and entities to spend their own money for political purposes, whether or not any part of that money was collected with public resources. Although the specifics of petitioners' argument are not entirely clear, petitioners appear to have two concerns. First, they are concerned that, because the "no" vote result statement states that current law does not restrict the use of "money collected with public resources," voters may mistakenly understand that current law allows the use of "public" money for political purposes, rather than only money of public employees that those employees choose to contribute—for example, through a payroll deduction plan—to a union or other organization. Second, they suggest that the statement fails to make clear that current law imposes no restrictions on the use of money collected from individuals by means of public resources—or on the use of *other* funds of an individual or organization with which money gathered by means of public resources may be commingled.

█    We sympathize with the task of the Attorney General in seeking to describe current law as it contrasts with the complicated restrictions that the measure would impose. We do agree, however, with both of petitioners' concerns. Some change should be made to the "no" vote result statement to make it clear that the money referred to is the employees' own money, rather than "public" money, and that current law imposes no restrictions on the way individuals or entities may use their own money, whether or not that money was collected, in whole or in part, by means of public resources.

█    Finally, petitioners argue that the certified summary fails to accurately summarize the measure in several respects. We agree with one of petitioners' arguments. As noted above, the measure provides that a "public resource" has been "used" even if the public entity is reimbursed for the cost of using or providing the resource. The summary does not describe that aspect of the definition of "public resource."

Petitioners argue that the summary should inform voters that "even where there is no expenditure of public resources, *i.e.*[,] when the cost of such resources is reimbursed, the measure prohibits use of such funds for 'political purpose' or maintenance of such funds with funds used for 'political purpose.'" The Attorney General responds that the certified summary accurately summarizes the proposed measure because it describes the flat prohibition on the use for political purposes of funds collected using public resources. The Attorney General asserts that voters will understand that "any use of public resources to collect [money that is used for a political purpose], without exception, triggers the restriction * * *."

We agree with petitioners. Absent the proposed measure's definition of "public resources" as including any use of public resources, even if reimbursed, one could make a reasonable argument that, if there is no net expenditure of public resources, no public resources were used. The measure appears to foreclose that interpretation, and voters must be informed of that aspect of the measure.

The ballot title is referred to the Attorney General for modification.